UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOSE ELIAS GUTIERREZ CUPIDO,

                              Petitioner,                       Case # 19-CV-6367-FPG

v.

                                                                   DECISION AND ORDER

WILLIAM P. BARR, et al.,

                              Respondents.

    *Pro se* Petitioner Jose Elias Gutierrez Cupido brought this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging his continued detention at the Buffalo Federal Detention Facility. ECF No. 1. On October 1, 2019, the Court granted the petition in part and ordered Respondent Jeffrey Searls to hold a bond hearing for Petitioner, at which the government would bear the burden of proving "by clear and convincing evidence that Petitioner's continued detention is justified based on risk of flight or danger to the community." ECF No. 8 at 6-7. On October 8, 2019, Immigration Judge Philip J. Montante, Jr. (the "IJ") held the ordered hearing. He found that the government had sustained its burden of proving that continued detention is justified based on Petitioner's risk of flight. ECF No. 17-2 at 10.

    Petitioner has now filed a motion requesting his immediate release on the ground that the hearing did not, in fact, comply with the Court's order. ECF No. 13. The government opposes the motion. For the reasons that follow, Petitioner's motion is DENIED.

## BACKGROUND

    The following facts are taken from the record. Petitioner is a native and citizen of El Salvador, and has been detained by immigration authorities since May 2018. On October 2, 2019, notice of the Court's Order granting the petition was sent to Respondents electronically and to Petitioner by mail. Respondents aver that, on that same day, Petitioner was personally served with

1

a notice that a bond hearing would be held October 8, 2019. Petitioner counters that he did not receive notice of the hearing until October 6, 2019.

For purposes of the motion, the Court will assume that Petitioner did not receive notice of the hearing until October 6. Petitioner claims that, because of the short turnaround between the notice and the hearing, his counsel was unable to appear, he was unable to submit letters of support (which his counsel possessed), and his family could not appear as witnesses. *See* ECF No. 13 at 3. Importantly, however, Petitioner does not assert—and there is no evidence in the record to suggest—that he objected to the hearing date or otherwise raised these concerns to the IJ or Respondents.

The IJ held the hearing as scheduled. A Spanish interpreter was present. ECF No. 17-1 at 2. The IJ asked Petitioner whether he had an attorney to represent him for the proceeding. ECF No. 17-2 at 6 n.1. Petitioner responded that an attorney named "Brenda" represented him, though he could not recall her last name. *Id.* Assuming that Petitioner was referring to Brenda Cisneros—an immigration attorney—the IJ contacted her organization, the Volunteer Lawyers Project, to determine whether she represented Petitioner. The organization "confirmed via telephone that neither the organization nor Ms. Cisneros represents [Petitioner]." *Id.* Because there was no other attorney of record on file, the IJ proceeded with the hearing.[1] *Id.*

Immigration authorities argued that Petitioner is a flight risk because he "does not have financial, proprietary, or significant familial ties to the United States" and because he has been ordered removed at the administrative level (though that order is on appeal). *Id.* at 7. Based on the IJ's written decision, it appears that the IJ asked Petitioner twice during the hearing if he had

---

[1] The Court agrees with the IJ that, at least based on the present record, there is no indication that Petitioner is represented by counsel with respect to the detention issues. In his memoranda, Petitioner states that he has counsel but does not identify who that person is. To the extent he is referring to his appellate counsel, *see* ECF No. 19 at 13, that attorney only represents him in conjunction with his petition for review. *Id.* at 16.

2

evidence to rebut those arguments. *Id.* at 10 n.7. Petitioner "chose to rebut in a limited way by presenting evidence of his wife's pending asylum application, rather than presenting evidence that would assure [the IJ] that he would be present for the remainder of his removal proceedings." *Id.*

On October 9, 2019, the IJ issued a written decision finding that immigration authorities had satisfied their burden of proving by clear and convincing evidence that Petitioner poses a flight risk. *See id.* at 9, 10. He noted that Petitioner only recently entered the United States and does not have any significant ties to the country—he owns no personal property and maintains no bank account here. Furthermore, the IJ found significant the fact that Petitioner's applications for relief from removal had been denied, which "necessarily increases the risk that [he] will flee if released from detention." *Id.* at 10. The IJ found unpersuasive Petitioner's evidence that his wife had a pending asylum application. He acknowledged "as a positive equity" that Petitioner might gain immigration status based on his wife's application, but he declined to "speculate as to the likelihood of success of [that] application." *Id.* For that reason, the IJ concluded that Petitioner's evidence did not mitigate the risk of flight. Finally, the IJ considered alternatives to detention and found that "less restrictive alternatives" could not "reasonably assure [Petitioner's] appearance." *Id.* Accordingly, the IJ found that "a denial of bond is appropriate." *Id.*

On October 31, 2019, Petitioner filed the present motion challenging the IJ's decision. ECF No. 13.

**DISCUSSION**

Before reaching the merits of Petitioner's motion, the Court must address three preliminary matters. First, on December 2, 2019, Respondents appealed the Court's October 1, 2019 Decision and Order. *See* ECF No. 15. This raises a question concerning the Court's continuing jurisdiction. "It is well-settled that the filing of a notice of appeal confers jurisdiction on the court of appeals and divests the district court of control over those aspects of the case involved in the appeal."

3

*Independent Living Aids, Inc. v. Maxi-Aids, Inc.*, 208 F. Supp. 2d 387, 392 (E.D.N.Y. 2002) (internal quotation marks omitted). "The divestiture of jurisdiction rule is, however, not a per se rule." *United States v. Rodgers*, 101 F.3d 247, 251 (2d Cir. 1996). One exception is that, absent a stay, a district court retains jurisdiction to enforce its orders and judgments despite an appeal. *See, e.g.*, *City of New York v. Venkataram*, No. 06 Civ. 6578, 2012 WL 2921876, at *3 (S.D.N.Y. July 18, 2012) (collecting cases). This includes orders granting habeas relief. *See Enoh v. Sessions*, No. 16-CV-85, 2017 WL 2080278, at *4-5 (W.D.N.Y. May 15, 2017). Therefore, the notice of appeal does not divest this Court of jurisdiction to review compliance with and, if necessary, enforce its previous order. *See id.*

Second, Respondents argue that 8 U.S.C. § 1226(e) divests this Court of jurisdiction to review the IJ's bond determination. That provision states, "The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien . . . ." 8 U.S.C. § 1226(e). This provision does not bar the Court's review. As an initial matter, Section 1226(e) concerns only "discretionary judgments" pertaining to "the application of *this section*"—that is, Section 1226. *Id.* (emphasis added). The Court is skeptical that the July 2019 bond hearing constitutes a proceeding conducted under Section 1226; rather, it was a court-ordered bond hearing that demanded procedural protections beyond those compelled by the statute itself. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 847-48 (2018); *Darko v. Sessions*, 342 F. Supp. 3d 429, 434-35 (S.D.N.Y. 2018). In any case, Section 1226(e) does not deprive a court of jurisdiction over constitutional and statutory challenges to detention. *Enoh*, 2017 WL 2080278, at *5; *see also Jennings*, 138 S. Ct. at 841 ("§ 1226(e) does not preclude challenges to the statutory framework that permits the alien's detention without bail." (internal quotation marks and brackets omitted)). Thus, even if it were otherwise applicable, the statute presents no obstacle

4

to review because the Court is not reviewing an immigration judge's discretionary judgment, but whether its order was followed—*i.e.*, "whether [Petitioner] received the due process to which he was entitled." *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 236 (W.D.N.Y. 2019).

Third, Respondents contend that Petitioner did not appeal the bond determination to the Board of Immigration Appeals and thereby failed to exhaust his administrative remedies. For the reasons discussed in other cases in this district, the Court disagrees that a petitioner must seek exhaustion before moving to enforce a judgment. *See id.* at 236-38; *Enoh*, 2017 WL 2080278, at *2-3.

The Court turns to the merits of Petitioner's motion. Petitioner raises substantive and procedural objections to the hearing and the IJ's determination. The Court addresses the substantive objection first.

Petitioner argues that the evidence was insufficient to prove by clear and convincing evidence that he posed a risk of flight. The Court disagrees. In reviewing the IJ's determination, the Court's task is narrow: it is to determine whether Respondents complied with the Decision and Order, not to review the hearing evidence *de novo* and determine whether Petitioner is in fact a flight risk. *See Nguti v. Sessions*, No. 16-CV-6703, 2017 WL 5891328, at *2 (W.D.N.Y. Nov. 29, 2017) (collecting cases). Thus, the question is "whether the immigration judge relied upon proof that could not possibly establish by clear and convincing evidence" that Petitioner is a flight risk. *Id.* The clear-and-convincing burden of proof "requires the government to prove that a factual contention is highly probable." *Hechavarria*, 358 F. Supp. 3d at 240 (internal quotation marks omitted).

Here, the IJ complied with the Court's October 1, 2019 Decision and Order. The record shows that he gave both sides an opportunity to submit evidence and argument, applied the correct standards, and arrived at a legally permissible conclusion in light of the available evidence. That

5

is, the IJ could reasonably conclude that Petitioner's risk of flight is highly probable. Based on the evidence before the IJ, Petitioner did not own property, maintain any bank account or other proprietary interest, or have significant family ties in the United States. The only connection Petitioner proffered was his wife's presence in the country. But because she was not an established resident and was seeking asylum, the IJ could reasonably conclude that this did not establish a strong tie or mitigate Petitioner's risk of flight. In short, the IJ could reasonably infer from the evidence that Petitioner did not have the sorts of ties that would render him "so deeply committed and personally attached that he cannot be driven from [them] by the threat of" removal. *United States v. Rueben*, 974 F.2d 580, 586 (5th Cir. 1992) (discussing risk of flight in the context of criminal pretrial detention); *see also Gianello v. Holder*, No. 11-CV-180, 2014 WL 1255884, at *3 (S.D. Cal. Mar. 24, 2014) (noting that lack of family ties and employment "tend to show" that an alien is a flight risk). In addition, Petitioner was subject to an administratively final order of removal, "which diminish[ed] his incentive to appear for further removal proceedings." *Singh v. Holder*, 638 F.3d 1196, 1205 (9th Cir. 2011) (noting that administratively final order of removal "is a relevant factor in the calculus").

Petitioner counters that there are other facts that show he is not a flight risk, including that his wife has a fixed address at which he can reside, and he has a cousin and uncle who are willing to financially support him. ECF No. 13 at 4. In his briefs on this motion, he also develops several other arguments to demonstrate that he is not a flight risk. *See* ECF No. 19 at 10-14.

The problem is that there is no indication in the record that Petitioner presented this evidence or raised these arguments to the IJ. As the Court stated, the Court's task is not to determine whether it believes that Petitioner is a flight risk, but only whether the IJ could reasonably make such a conclusion based on the evidence presented. *See Nguti*, 2017 WL

6

5891328, at *2. The Court cannot fault the IJ for failing to consider evidence or arguments that Petitioner did not raise at the hearing.

This leads to Petitioner's procedural argument, however. Petitioner contends that he was deprived of a meaningful hearing because he received notice of the hearing only two days before it was scheduled, which "did not allow his counsel to come and to submit supporting [evidence]" and prevented his family from appearing as witnesses. ECF No. 19 at 7. In other words, Petitioner claims that the short time frame inhibited his ability to obtain evidence and develop arguments in time for the hearing.

Even if true,[2] the Court cannot conclude that Respondents or the IJ violated the Court's October 1, 2019 Decision and Order on that basis. The Court ordered that a bond hearing be conducted by October 15, 2019, but it did not require that it be scheduled at any particular date or time. By implication, the Order assumed that the bond hearing would be scheduled and conducted consistent with ordinary practice. Generally, immigration judges exercise "independent judgment and discretion" in the "disposition of [their] cases," 8 C.F.R. § 1003.10(b), and are responsible for scheduling matters and providing notice to the parties. *Id.* § 1003.18(a). Indeed, the Second Circuit has noted that "[j]ust as United States District Judges have broad discretion to schedule hearings and to grant or to deny continuances in matters before them, IJs have similarly broad discretion with respect to calendaring matters." *Sanusi v. Gonzales*, 445 F.3d 193, 199 (2d Cir. 2006). Challenges to calendaring decisions are reviewed for abuse of discretion. *See id.*

Consequently, the Court would only be inclined to grant relief on Petitioner's theory if the IJ scheduled the hearing for the very purpose of interfering with Petitioner's right to a hearing or

---

[2] The record shows that, at least as of May 2019, Petitioner had some supportive evidence in his possession, as he submitted such documents to the Court with his petition. *See* ECF No. 1-1 at 58-78.

7

otherwise abused his discretion when scheduling the matter. Petitioner does not argue the former, and the Court is not persuaded of the latter.

On its face, the IJ's decision to schedule the hearing for October 8, 2019 did not amount to an abuse of discretion. If anything, that compressed timeframe was for Petitioner's benefit: he had been detained for more than sixteen months and was entitled to a hearing to justify his continued detention. The prejudice arose not from the scheduling of the hearing but from the delayed notice given to Petitioner. Although the IJ scheduled and sent notice of the hearing on October 2, 2019, for some unknown reason Petitioner did not receive that notice until October 6.[3]

Had Petitioner raised this issue to the IJ, it would be a closer question as to whether, in light of the delayed notice, the IJ could permissibly hold the hearing on October 8. But nothing in the record suggests that Petitioner informed the IJ of the late notice, the missing evidence, or his desire to adjourn the hearing. Rather, he participated in the hearing without comment on those matters. Under these circumstances—where the IJ scheduled a hearing swiftly in order to comply with a court-ordered deadline, and Petitioner raised no objection prior to or at the hearing—the Court cannot find that the IJ deviated from ordinary practice or abused his discretion in such a manner as to deprive Petitioner of the hearing to which he was entitled. *Cf. Drobny v. I.N.S.*, 947 F.2d 241, 244 (7th Cir. 1991) (immigration judge did not abuse discretion when he conducted hearing without interpreter, where, *inter alia*, alien "did not object to the absence of an interpreter").

The only hint that might have led the IJ to believe that Petitioner was unprepared or in need of a continuance was the absence of Petitioner's alleged counsel. But the IJ took steps to determine

---

[3] The certification section of the notice indicates that it was served on Petitioner "c/o Custodial Officer" on October 2, 2019. ECF No. 17-2 at 4. It may be that authorities at the detention facility did not serve the notice on Petitioner until October 6. Regardless, there is no indication that the delay was the product of bad faith.

whether Petitioner was even represented.  Having reviewed the court docket and contacted the Volunteer Lawyers Project, the IJ concluded that Petitioner did not have counsel.  The IJ proceeded with the hearing, and Petitioner does not appear to have objected to that decision.  Given the steps the IJ took, the Court cannot say that the IJ was required to take further steps or that he should have *sua sponte* adjourned the hearing.

The Court recognizes that Petitioner is a layperson who cannot be held to the same standard as an attorney.  Still, Petitioner does not articulate any reason why he could not have simply requested an adjournment or informed the IJ of his predicament.  Perhaps he has some justification for not doing so, but on this record the Court cannot discern one.  Accordingly, the Court cannot conclude that Respondent Searls or the IJ failed to adhere to the Court's Order.  Petitioner is not entitled to relief.

## CONCLUSION

For the reasons stated herein, Petitioner's motion for relief (ECF No. 13) is DENIED.

IT IS SO ORDERED.

Dated: January 9, 2020
      Rochester, New York

                                                          HON. FRANK P. GERACI, JR.
                                                          Chief Judge
                                                          United States District Court